IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEAN MICHAEL BRAUN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:21CV638 |
| ) | |
| STATE OF NORTH CAROLINA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) Respondent has moved to dismiss on grounds of untimeliness. (Docket Entries 7, 8.) For the reasons that follow, the Court should grant Respondent's Motion to Dismiss and dismiss the Petition as untimely.

### I. Procedural History

On March 10, 2005, in the Superior Court of Davidson County, Petitioner pled guilty to first degree murder in case 04CRS58397. (See Docket Entry 2, ¶¶ 1, 4-6; see also Docket Entry 8-2.) In accordance with the plea agreement (see Docket Entry 8-2 at 3), the state agreed that Petitioner should receive a life sentence without the possibility of parole in lieu of the death penalty (see id.) and dismissed the robbery with a dangerous weapon charge (see id. at 5), and the trial court sentenced Petitioner to life in prison

without the possibility of parole (see Docket Entry 2, ¶ 3; see also Docket Entry 8-3).[1]  Petitioner did not appeal.[2]

Many years later, Petitioner submitted a pro se motion for appropriate relief ("MAR") to the trial court (see Docket Entry 8-5) ("2014 MAR"), which Petitioner dated as signed on June 2, 2014 (see id. at 14), and which that court accepted as filed on June 6, 2014 (see id. at 2).  The trial court denied Petitioner's MAR on June 13, 2014 (see Docket Entry 8-6 at 2) and, so far as the record reflects, Petitioner did not pursue his 2014 MAR further.

---

[1] Throughout this Memorandum Opinion, pin citations refer to the page numbers that appear in the footer appended to documents upon their docketing in the Court's CM/ECF system.

[2] Although Petitioner checked the box on his Petition indicating he appealed his conviction (see Docket Entry 2, ¶ 8), the information he supplied about that alleged appeal actually reflect details regarding his Motion for Appropriate Relief ("MAR") filed in the trial court in 2021 (see id., ¶ 9). Moreover, Respondent provided the following information in its Brief supporting the lack of a direct appeal by Petitioner:

> Although Respondent did not locate any appellate entries in any of the court documents obtained from the [trial court's] clerk's office, Respondent did locate a letter from the [A]ppellate [D]efender (dated 27 December 2005) to [t]he [trial court] refusing to appoint appellate counsel on the basis that . . . [Petitioner] did not have a right to appeal and was not entitled to appellate counsel. ([Docket Entry 8-4.])  Respondent notes that the letter indicates [the trial court] attempted to appoint Petitioner counsel on 4 April 2005, which would have been outside the fourteen day window for appeal.  See N.C. R. App. P. 4(a) (14 days to serve notice of appeal).  Respondent did not locate any other indication of appeal in the court documents and notes that this finding has no overall effect on the analysis in this case.

(Docket Entry 8 at 1-2 n.1.)  Petitioner responded in opposition to Respondent's instant Motion but did not address the matter of a direct appeal at all, much less take the position that he had made any timely attempts to (or did) file a direct appeal.  (See Docket Entry 10.)  As such, for purposes of the timeliness analysis, this Recommendation will proceed under the premise that Petitioner did not file a direct appeal.

Nearly seven years later, Petitioner submitted a second MAR to the trial court (see Docket Entry 2, ¶¶ 9(a)-(f), 11(a); see also Docket Entry 8-7) ("2021 MAR"), which he dated as signed on March 30, 2021 (see Docket Entry 8-7 at 11, 22, 27, 43, 48), and which the trial court accepted as filed on April 6, 2021 (see Docket Entry 8-8 at 2 (trial court's Order denying 2021 MAR reflecting MAR's filing date)). The trial court denied the 2021 MAR by Order dated April 8, 2021. (See Docket Entry 2, ¶¶ 9(c)-(d), 11(a)(8); see also Docket Entry 8-8.) Subsequently, Petitioner submitted a petition for writ of certiorari to the North Carolina Court of Appeals seeking review of the trial court's denial of Petitioner's 2021 MAR (see Docket Entry 2, ¶ 11(b); see also id. at 16-22), which Petitioner signed as dated on both May 27 and 28, 2021 (see Docket Entry 2 at 20-22), and which the Court of Appeals accepted as filed on June 2, 2021 (see Docket Entry 2, ¶ 11(b)(3); see also Docket Entry 2 at 23 (Court of Appeals' Order denying certiorari petition reflecting petition's filing date)). The Court of Appeals denied that petition on June 9, 2021. (See Docket Entry 2 at 23.)

Petitioner thereafter submitted the instant Petition to this Court on August 9, 2021. (See Docket Entry 2 at 15.)[3] Respondent moved to dismiss on grounds of untimeliness (Docket Entries 7, 8), and Petitioner responded in opposition (Docket Entry 10). For the

---

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems Section 2254 petitions as filed on the date the petitioner signs the petition, under penalty of perjury, as submitted to prison authorities.

3

reasons that follow, the Court should grant Respondent's Motion to Dismiss, because Petitioner submitted his Petition outside of the one-year limitations period.

## II. **Grounds for Relief**

The Petition raises four grounds for relief:

1) "[i]neffective [a]ssistance of [c]ounsel" (Docket Entry 2, ¶ 12(Ground One)) in that "counsel abandoned the required duty of loyalty to [Petitioner]; counsel did not simply make poor strategic and tactical choices; he acted with reckless disregard for [Petitioner]'s best interest by not subpoena [sic] [his] psychologist and failed to object to evidence from a warrant-less search and seizure being introduce [sic] into evidence" (id., ¶ 12(Ground One)(a));

2) "[i]nvalid [p]lea [a]greement" (id., ¶ 12(Ground Two); see also id., ¶ 12(Ground Two)(a) (setting forth as "[s]upporting facts" that "several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial" including "the privilege against compulsory self-incrimination," as well as that Petitioner's "mental health medication had an effect on his abilities to make voluntarily [sic] decision" and "[t]he court was not allowed to assume"));

3) "[i]llegal [s]earch and [s]eizure" (id., ¶ 12(Ground Three)), because "[e]vidence obtained from the pawn shop and Wal-Mart was not in Davidson County jurisdiction" (id., ¶ 12(Ground Three)(a)); and

4) "[a]ctual [i]nnocence" (id., ¶ 12(Ground Four); see also id., ¶ 12(Ground Four)(a) (alleging that "[d]etectives knew Petitioner [] had mental health issues and was subject to suggestive questioning that underminded [sic] his ability to withstand there [sic] attacks, for he was under . . . mental health medication" as "[s]upporting facts")).

4

## III. Discussion

Respondent seeks dismissal of the Petition on the grounds that Petitioner filed it outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 8 at 6-12.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been

discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondent correctly contends that the Petition qualifies as untimely under subparagraph (A). (Docket Entry 8 at 6-10.)[4] North

---

[4] Neither Petitioner nor Respondent argues that subparagraphs (B), (C), or (D) apply in this situation. (See Docket Entries 2, 8, 10.) Moreover, the plain language of subparagraphs (B) and (C) confirms that they have no possible application, as Petitioner's Grounds for Relief do not assert a state-created "impediment to filing" the instant Petition, 28 U.S.C. § 2244(d)(1)(B), or invoke a new "constitutional right" recognized by the United States Supreme Court and "made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C). (See Docket Entry 2, ¶ 12.) Furthermore, subparagraph (D) could not apply because Petitioner knew, or through exercise of due diligence should have known, of the factual predicates of all of his Grounds for Relief since the time of his guilty plea and judgment on March 10, 2005. (See Docket Entry 2, ¶ 12.) "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). Although Petitioner has not directly argued that subparagraph (D) should apply, he has asserted that he acquired "new evidence" in the form of his "medical records of medication he was under during the signing of the plea agreement" (Docket Entry 2, ¶ 18 (not providing copies of such "medical records"); see also Docket Entry 10 at 14 (alleging existence of "[n]ewly discovered evidence that Petitioner's medications Seroquel and Wellbutrin are mental restraint [sic] that undermined his ability to understand voluntarily the proceeding"); 13 (claiming that unidentified source(s) "produced" new evidence of Petitioner's mental health issues and/or medications 15 years after guilty plea), which the Court could construe as an argument that, as to Ground Two alleging an invalid guilty plea (see Docket Entry 2, ¶ 12(Ground Two)), subparagraph (D) should apply. As explained in more detail infra, however, Petitioner's plea colloquy belies his contention that he did not know of his own mental health issues and/or medications until 15 years after his plea (see Docket Entry 2 at 98-100 (containing Petitioner's admission under oath that he had taken Wellbutrin and Seroquel for six years prior to plea)). Similarly, to the extent Petitioner maintains that his allegations that SBI agents knew of Petitioner's mental health issues and "suggestively question[ed]" him constitutes new evidence (Docket Entry 10 at 14; see also Docket Entry 2, ¶ 12(Ground Four)), Petitioner has not made any attempt to explain how he lacked knowledge at the time of his plea concerning SBI agents questioning Petitioner prior to his plea (see id.). Thus, Petitioner has not demonstrated the necessary "due diligence" for application of subparagraph (D). See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered factual predicate of claim earlier); Farabee v. Clarke, No. 2:12CV76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013)
(continued...)

Carolina limits the ability of individuals who plead guilty to appeal their convictions as a matter of right. See N.C. Gen. Stat. § 15A-1444. Here, the trial court sentenced Petitioner to life in prison without the possibility of parole (see Docket Entry 8-3), and that sentence constituted the only lawful sentence other than death for a Class A felony, regardless of prior record level, see N.C. Gen. Stat. § 15A-1340.17(c) (version effective from December 1, 1997, to November 30, 2009, applicable to Petitioner's offense on August 7, 2004). Therefore, Petitioner could not appeal his conviction as a matter of right, see N.C. Gen. Stat. § 15A-1444(a1), and Petitioner's conviction finalized under subparagraph (A) on March 10, 2005 - the day the trial court signed the judgment and commitment forms in his criminal case (see Docket Entry 8-3). See Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner lacked right to appeal, limitation period ran from day of judgment) (Osteen, Sr., J., adopting recommendation of Dixon, M.J.).[5]

---

[4](...continued)
(unpublished) (finding subparagraph (D) inapplicable where the petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06CV403, 2006 WL 2970439, at *1 (N.D. Tex. Oct.16, 2006) (unpublished) (concluding that the petitioner bore burden of demonstrating applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Accordingly, subparagraph (D) does not apply.

[5] Further, "[a]ssuming arguendo Petitioner had a right to appeal his 10 March 2005 guilty plea and judgment, his case became final 14 days later on Thursday, 24 March 2005, when his time to file notice of appeal expired." (Docket Entry 8 at 7 (citing N.C. R. App. P. 4(a) (allowing 14 days to appeal
(continued...)

Petitioner's one-year period under AEDPA then ran, unimpeded, from March 24, 2005, until it expired one year later on Friday, March 24, 2006. Because Petitioner did not file the instant Petition until August 9, 2021 (see Docket Entry 2 at 15), that filing remains more than 15 years out of time. Moreover, because (as detailed above) Petitioner submitted all of his post-conviction filings well after AEDPA's one-year statute of limitations had already run, none of those belated filings could toll the limitations period, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

In the paragraph of the Petition that directs Petitioner to "explain why the one-year statute of limitations as contained in [AEDPA] does not bar [his P]etition," Petitioner states as follows:

> Habeas corpus: Actual innocence, if proved, held to be gateway through which state prisoner petitioning for federal habeas corpus relief might pass, regardless of whether impeded by procedural bar or expiration of 28 U.S.C.S. 2244(d)(1)'s limitations period McQuiggin v. Perkins, [569 U.S. 383] (2013)[,] Schlup v. Delo, 513 U.S. 288 (1995), House v. Bell, 547 U.S. 518 [(2006)] or expiration of the AEDPA statute of limitations, as in this case. A federal habeas court faced with an actual innocence gateway claim should count unjustifiable delay on a habeas petitioner's part in determining whether actual innocence has been reliably shown. A petitioner invoking the miscarriage of justice exception must show that it is more likely than not that no reasonable juror

---

[5](...continued)
from criminal judgment)).) Accordingly, even including a right to appeal, Petitioner's judgments finalized, at the latest, on March 24, 2005. See Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case finalizes when time for pursuing direct review expires). Those 14 extra days would not affect the timeliness analysis.

> would have convicted him in the light of the new evidence - Petitioner's medical records of medication he was under during the signing of the plea agreement.

(Docket Entry 2, ¶ 18 see also Docket Entry 10 at 14 ("[P]etitioner is a mental health patient under medical restraint regarding his medication. Petitioner contends that he is actual [sic] innocent of the charges against him. [The SBI agents] knew Petitioner had long-time mental health issues and was subject to suggestive questioning that undermined his ability to withstand there [sic] attacks and understand voluntarily the proceedings. Newly discovered evidence that Petitioner's medications Seroquel and Wellbutrin are mental restraint [sic] that undermined his ability to understand voluntarily the proceeding." (internal parenthetical citations omitted)); see also id. at 16 ("The trial court had no power to act as Petitioner's psychiatrist and assume what effect those medical-restraint [sic] had upon him mentally.").) Petitioner additionally contends he first learned of this "evidence" regarding his mental health issues and medications 15 years after his guilty plea. (See Docket Entry 10 at 13 ("[T]he evidence upon which [P]etitioner's claim of innocence rests was not produced at his trial, but rather over fifteen years later. . . . Petitioner's showing of innocence, and indeed his constitutional claim for relief based upon that showing, must be evaluated in the light of the previous proceeding in this case, which have [sic] stretched over a span of fifteen years."). As

9

discussed in further detail below, those arguments do not establish a basis for overcoming the Petition's untimeliness.

The United States Supreme Court has recognized that a showing of actual innocence may excuse noncompliance with the one-year limitations period. See McQuiggin, 569 U.S. at 386. However, the Supreme Court also ruled that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id.; see also United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014) (noting that "substantial claim[s] of actual innocence are extremely rare" (quoting Schlup, 513 U.S. at 321)). Moreover, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. The reviewing court must consider "all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial." House, 547 U.S. at 538 (internal quotation marks omitted). For the reasons that follow, Petitioner has fallen far short of that stringent standard.

10

To begin, Petitioner's allegations regarding his mental health issues and/or medications do not qualify as "new" evidence, Schlup, 513 U.S. at 324. In that regard, the record flatly contradicts Petitioner's assertion that he first learned of the "medication he was under during the signing of the plea agreement" 15 years after his guilty plea (Docket Entry 2, ¶ 18; see also Docket Entry 10 at 13, 14). The following colloquy took place at Petitioner's plea hearing:

> [TRIAL] COURT: Are you presently under the influence of any alcohol, drugs, narcotics, medicines, pills or other intoxicants?
>
> [PETITIONER]: Yes, your Honor.
>
> [TRIAL] COURT: And can you tell me what you are on and what you understand the effects of those to be?
>
> [PETITIONER]: I take Wellbutrin and Seroquel. Seroquel is a highly strong derivative which sometimes impairs your ability to comprehend stuff.
>
> [TRIAL] COURT: All right. What's Wellbutrin?
>
> [PETITIONER]: It's an anti depressant.
>
> [TRIAL] COURT: Now, have these been prescribed for you over a long period of time?
>
> [PETITIONER]: Yes, your Honor.
>
> [TRIAL] COURT: Do you know for about how long you have been on the Seroquel?
>
> [PETITIONER]: About six years.
>
> [TRIAL] COURT: Okay. How about the Wellbutrin?
>
> [PETITIONER]: About the same.
>
> [TRIAL] COURT: All right. And do you take these on a daily basis?

11

[PETITIONER]: Yes.

[TRIAL] COURT: You take both medications on a daily basis?

[PETITIONER]: Yes.

[TRIAL] COURT: Do you take them more than once a day?

[PETITIONER]: No, I take each one once a day.

[TRIAL] COURT: What time of the day or night do you take those medications?

[PETITIONER]: <u>I take Wellbutrin at 8:00 o'clock in the morning. Seroquel at 8:00 o'clock . . . at night</u>.

[TRIAL] COURT: You took the Seroquel at 8:00 o'clock last night?

[PETITIONER]: Yes.

[TRIAL] COURT: And you took the Wellbutrin at 8:00 o'clock this morning?

[PETITIONER]: Yes.

[TRIAL] COURT: That's your best estimate of time for taking those medications?

[PETITIONER]: Yes.

(Docket Entry 2 at 98-100 (emphasis added).)

Those statements under oath make clear Petitioner knew he took both Wellbutrin and Seroquel at the time of his plea, and that he had taken those medications for approximately <u>six years</u> prior to the plea hearing. (See id.) Moreover, Petitioner knew what times of the day he took each medication, as well as when he last took each medication. (See id.) Finally, Petitioner knew about the medications' possible effect on his mental abilities. (See id.) Such sworn statements preclude Plaintiff from claiming in the

12

instant Petition that his mental health issues and/or medications constitute "new" evidence. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("Representations of the defendant, his lawyer, and the prosecutor at [ ] a [plea] hearing as well as any findings made by the judge in accepting the plea constitute a formidable barrier in subsequent collateral proceedings."); Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984) ("In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea."). Similarly, Petitioner failed to explain how he did not know about the allegedly "suggestive questioning" of the SBI agents at the time of his plea, as any such questioning involved Petitioner and took place prior to his plea. (See id.)

Petitioner's contentions regarding his mental health issues and/or medications also fail to qualify as "reliable," Schlup, 513 U.S. at 324. Again, the colloquy at Plaintiff's plea hearing belies Plaintiff's self-serving, unsupported allegations:

> [TRIAL] COURT: Is your mind clear and understanding and knowledgeable?
>
> [PETITIONER]: Yes.
>
> [TRIAL] COURT: From your understanding and knowledge do you understand and comprehend the nature of these proceedings?
>
> [PETITIONER]: Yes.
>
> [TRIAL] COURT: Have you gone over this plea transcript with your attorneys before coming in here this afternoon?
>
> [PETITIONER]: Yes.

13

> [TRIAL] COURT: Have your attorneys explained to you . . . the nature of the charges against you and the elements of those charges?
>
> [PETITIONER]: Yes, your Honor.
>
> [TRIAL] COURT: <u>Do you understand every element of each charge against you</u>?
>
> [PETITIONER]: <u>Yes</u>, your Honor.
>
> [TRIAL] COURT: <u>Have you discussed with your lawyers any possible defenses</u> to these charges if you went forward with a jury trial?
>
> [PETITIONER]: <u>Yes</u>, your Honor.

(Docket Entry 2 at 100 (emphasis added).) Likewise, Petitioner has proffered no evidence beyond his own bald assertions that the SBI agents "knew" Petitioner had "mental issues" and engaged in "suggestive questioning." (See Docket Entry 10 at 14.) That failure precludes relief. See <u>McDowell v. Lemke</u>, 737 F.3d 476, 483-84 (7th Cir. 2013) (deeming "inherently suspect" the petitioner's "eleventh hour" self-serving affidavits containing no indicia of reliability (internal quotation marks omitted)); <u>Kuenzel v. Allen</u>, 800 F. Supp. 2d 1162, 1181 (N.D. Ala. 2009) ("To permit such self-serving testimony to suffice would set the bar 'so low that virtually every [actual innocence] claimant would pass through it.'" (quoting <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 340 (3d Cir. 2004))).

Furthermore, Petitioner's assertions concerning his mental health issues and/or medications do not show his "<u>factual</u> innocence," <u>Bousley</u>, 523 U.S. at 623 (emphasis added). Petitioner

14

has made no argument that his mental health issues or medications had <u>any</u> tendency to exculpate him of the offense of first-degree murder, let alone that such evidence would show that no reasonable juror could vote to find him guilty beyond a reasonable doubt. (<u>See</u> Docket Entries 2, 10.) Accordingly, Petitioner has failed to make a showing of actual innocence sufficient to avoid the limitations period in this matter.

The Court could construe Petitioner's arguments regarding his mental health issues and /or medications as an attempt to establish grounds for equitable tolling of the limitations period, <u>see Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (holding that equitable tolling requires proof that "extraordinary circumstance . . . prevented timely filing"). However, Petitioner's alleged mental health issues and/or medications do not establish entitlement to equitable tolling for three reasons.

First, the trial court found during the plea hearing that Petitioner: 1) could hear and understand the trial court (<u>see</u> Docket Entry 8-2 at 2); 2) could read and write at a ninth grade level (<u>id.</u>); 3) understood the nature of the charges, defenses to the charges, and the consequences of pleading guilty (<u>id.</u>); 4) entered his guilty plea of his own free will, fully understanding his actions (<u>id.</u> at 3); and 5) had no questions about his plea or his case (<u>id.</u>). Those factual findings carry a presumption of correctness, <u>see</u> 28 U.S.C. § 2254(e), which Petitioner's bald assertions have not overcome (<u>see</u> Docket Entries 2, 10).

15

Second, even if Petitioner could overcome that presumption of correctness, the Fourth Circuit has made clear that "equitable tolling because of a petitioner's mental condition" applies "only in cases of profound mental incapacity." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Notably, in so holding, the Fourth Circuit cited a Ninth Circuit decision that limited "equitable tolling based on mental condition" to "exceptional circumstances, such as institutionalization or adjudged mental incompetence." Id. (citing Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998)). Petitioner has made no showing that his alleged mental health issues and/or medications resulted in institutionalization or incompetence at any time, let alone during the limitations period. See Allen v. Bell, 250 F. App'x 713, 716 (6th Cir. 2007) (denying inmate who alleged low IQ equitable tolling because he failed to "ma[ke] any factual showing of mental incapacity"); Diamond v. Clarke, No. 7:18CV580, 2019 WL 4546918, at *3 (W.D. Va. Sept. 19, 2019) (unpublished) (same).

Third, Petitioner has failed to allege any facts showing how his alleged mental health issues and/or medications actually prevented him from timely filing the instant Petition. See House v. Clarke, No. 3:16CV238, 2017 WL 990580, at *4 (E.D. Va. Mar. 14, 2017) (unpublished) (finding equitable tolling inapplicable where the petitioner did not show how his mental condition prevented him from timely filing). Specifically, Petitioner has not explained in any meaningful way why he could not, with due diligence, have made

16

all appropriate filings before his one-year, post-conviction limitation period expired despite his issues. (See Docket Entry 2, ¶ 18; see also Docket Entry 10.) For example, Petitioner has failed to detail his efforts to obtain assistance before the expiration of his one-year federal filing period. (See id.) Petitioner thus has not met his burden of showing that an "extraordinary circumstance" prevented him from making a timely filing in spite of his exercise of proper diligence.

In sum, Petitioner cannot avoid the statute of limitations in this case.

## IV. Conclusion

The statute of limitations bars the instant Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 7) be granted, that the Petition (Docket Entry 2) be dismissed, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 14, 2022

17

Case 1:21-cv-00638-TDS-LPA   Document 11   Filed 01/14/22   Page 17 of 17